UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KENDALL JOHNSON,

        **Plaintiff,**

-vs-                         **Case No.  6:09-cv-1741-Orl-GAP-GJK**

DISNEY DESTINATIONS, LLC,

        **Defendant.**

_____

## ORDER

This matter came before the Court without oral argument upon consideration of

Defendant's, Disney Destinations, LLC ("Defendant"), Motion for Summary Judgment (the

"Motion") (Doc. 18), Plaintiff's, Kendall Johnson ("Plaintiff"), response in opposition thereto (the

"Response") (Doc. 24) and Defendant's reply (Doc. 27).

## I.  Overview

This is an employment discrimination case arising under 42 U.S.C. § 2000e [hereinafter

"Title VII"].[1]  On June 30, 2009, Plaintiff, a black male, brought suit after his supervisor, who was

also a black male, terminated Plaintiff's employment for violating Defendant's "presenteeism"

policy (i.e., for repeatedly failing to show up for work on time and, in some instances, failing to

---

[1]While Plaintiff also relies on 42 U.S.C. § 1981 and the Florida Civil Rights Act, FLA. STAT. § 760.10 *et seq*., the Complaint contains only a single count labeled "Disperate Treatment." (Doc. 2 at 4).  Irrespective of Plaintiff's reliance on Title VII, the Florida Civil Rights Act, or Section 1981, the analysis of Plaintiff's claim is the same.  *See, e.g.*, *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (noting that where a plaintiff "predicates liability under Title VII on disparate treatment and also claims liability under section[] 1981 . . . the legal elements of the claims are identical") (internal citations and quotations omitted); *Brown Distrib. Co. of W. Palm Beach v. Marcell*, 890 So. 2d 1227, 1230 n.1 (Fla. 4th DCA 2005) ("Federal case law interpreting Title VII . . .  is applicable to cases arising under the Florida [Civil Rights] Act") (citations omitted).

show up for work at all).  According to Plaintiff, his termination amounts to disparate treatment because a similarly situated employee, an Hispanic female who also had presenteeism issues, was treated more favorably than Plaintiff.[2]

In its Motion, Defendant contends that it is entitled to a judgment as a matter of law because Plaintiff has failed to establish a prima facie case of disparate treatment or any evidence that the reason for his termination was a pretext for discrimination.  (Doc. 18 at 1-2).

For the reasons, *infra*, Defendant's Motion will be granted.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## II. Undisputed Facts

### A. Plaintiff's Employment

Plaintiff was hired by Defendant in October 2007 as a reservation agent (also known as an "intender") in the Disney Reservation Center ("DRC") in Orlando, Florida.[3]  While employed at the DRC, Plaintiff's immediate supervisor was Jerry Lazarre, a black male.  (Doc. 19, ¶¶ 3 and 10).  Shortly after Plaintiff completed his training period, he began to have problems with tardiness and absenteeism.  (Docs. 19, ¶ 3; 24 at 1).  On three consecutive monthly employment evaluations beginning in December 2007 through February 2008 (which are discussed further, *infra*), Plaintiff received a "B" rating ("below expectations") for his failure to abide by Defendant's presenteeism policy.[4]  (Docs. 19, ¶ 4; 24 at 2-3).  Plaintiff's three consecutive negative evaluations within a 12-

---

[2]It is undisputed that Plaintiff's comparator, Nelda Negron-Quinones, was also terminated by Plaintiff's supervisor for violating Defendant's presenteeism policy.

[3]Reservation agents are responsible for fielding telephone calls from prospective guests and assisting them in making reservations for hotels, restaurants, and theme parks at Walt Disney World Resort.

[4]Plaintiff was on track to receive another "B" rating for March 2008 for consecutive "no call, no shows" (i.e., completely failing to show up for work without calling his employer).  (Docs. 18, ¶ 12; 19, ¶ 8).

month period subjected him to termination pending a review by Defendant's human resources

department.  Accordingly, Lazaree referred Plaintiff's potential termination to Colleen Salisbury,

the human resources team leader for DRC, who approved Lazaree's termination request based on

Plaintiff's repeated violations of Defendant's presenteeism policy.  (Doc. 18, ¶ 13).  On March 25,

2008, Lazarre terminated Plaintiff's employment.  (Docs. 2, ¶ 12; 19, ¶ 10).

### B. Defendant's Performance Guidelines and Evaluations

Defendant utilizes a performance management tool known as "Dashboard" to evaluate its

employees:

> Each month, employees receive a Dashboard, which rates them on a number of
> scales, including Presenteeism (attendance) and Revenue (income generation).[5]
> With respect to Presenteeism, each employee is allotted a certain "bank" of
> hours each fiscal year (October 1 through September 30).  If employees call in
> sick, volunteer for a release of a shift, are a "no call, no show," or are late, the
> time is deducted from their bank.  Certain absences are not counted against the
> bank, including approved medical, bereavement, or military leave, or pre-
> approved shift changes for vacation or holidays. Employees are trained to
> "clock" in by telephone, although they can also clock in through the computer
> system.  If an employee has other paid time available, such as vacation or
> floating holidays, and wants to utilize that paid time for a day where he or she
> has called in sick, the employee will be paid for that day, but the time off will
> still count against their bank (because it was not pre-approved leave time).  Once
> employees exceed the time in their bank, then they receive either a "B" (below
> expecations) or a "U" (unsatisfactory) on their Presenteeism Dashboard.  If
> employees receive three Bs or a B and 2 Us in a rolling 12 month period, then
> they are subject to termination.

---

[5]Defendant does not contend that Plaintiff failed to satisfy the revenue expectations during his
employment.

(Doc. 21 at ¶ 3).[6]  Defendant's employees are informed of these performance expectations at

training, during one-on-one sessions with their supervisors, and in the DRC Policies and

Procedures forms that they sign upon being hired.[7]  Employees also have the opportunity to dispute

any discrepancies found in their attendance records by simply filing out an online form or raising

---

[6]Plaintiff first exceeded his presenteeism bank (i.e., was absent or tardy beyond his allotted 48 hours) in December 2007 and continued to accumulate excess deductions from his bank in January 2008 and February 2008.  Plaintiff's time, in excess of his 48 hour bank, was as follows:

| | |
|---|---|
| December 2007: | 3 hours, 33 minutes |
| January 2008: | 4 hours, 11 minutes |
| February 2008: | 16 hours, 43 minutes |

Defendant adjusted its presenteeism (and revenue) guidelines in the spring of 2008.  (Docs. 21 at ¶ 4-5; 18 at 3).  Specifically, in March 2008, the presenteeism policy was retroactively changed, effective to October 2007, to allow a "pass" for an employee's first "B" if the "B" resulted from seven or fewer occurrences.  (Docs. 21 at ¶ 4-5; 18 at 3).  This policy change was not applicable to Plaintiff's first "B" rating, which resulted from more than seven occurrences.

In his Response, Plaintiff contends that the change in Defendant's presenteeism policy was a means for it "to selectively retain individuals that [it] wanted to keep, but to discard those it wanted to terminate."  (Doc. 24 at 5-6).  More specifically, Plaintiff notes that 71 individuals have "benefitted" from this new policy, of which 63% were white, 70% were female, and 5% were black. Plaintiff therefore argues that Defendant's policy change had the intent (or at least effect) of benefitting intenders outside his protected class. (Doc. 24 at 6).  Plaintiff's contention is irrelevant and the fact that certain individuals outside of Plaintiff's protected class may have benefitted from Defendant's new presenteeism policy is of no moment.  Plaintiff and his comparator, as discussed, *infra*, were each subject to termination under both the old and new presenteeism policies. Furthermore, Plaintiff's termination claim is not predicated on Defendant's change in its presenteeism policy (indeed, Plaintiff was not even aware of the policy change when he brought suit (Doc. 24 at 5-6)).  In short, even assuming, *arguendo*, that Defendant's new presenteeism policy was discriminatory, there is no evidence that the policy discriminated against Plaintiff.

[7]It is undisputed that Plaintiff received the DRC Policies and Procedures forms during training and that he reviewed the presenteeism guidelines with Lazarre on December 1, 2007.  (Doc. 18 at 4).

-4-

the issue in person with Defendant's ATLAS (All Things Labor and Support) office, which is located within the DRC.[8]  (Doc. 19, ¶ 9).

### C. Plaintiff's Comparator: Nelda Negron-Quinones

Nelda Negron-Quinones was hired as a sales representative at DRC in October of 2007. She, like Plaintiff, was also supervised by Lazarre.  Negron-Quinones received her first negative Dashboard rating (a "B" in presenteeism) in February 2008 and received her second and third negative ratings in March and April 2008, respectively.[9]  In May 2008, Lazarre referred Negron-Quinones' potential termination to Salisbury, who approved Lazaree's termination request based on Negron-Quinones' repeated violations of Defendant's presenteeism policy.[10]  Salisbury

---

[8]It is undisputed that Plaintiff was aware of this grievance process and that he failed to file a discrepancy report in regard to any of his three consecutive negative Dashboard ratings.  (Johnson Dep. at 179-80; Doc. 22-2 at 47-48).  It was not until after his termination that Plaintiff first contacted Defendant's Human Resources office to complain that his time records were inaccurate.  (Doc. 20 at ¶ 3-7).

[9]Negron-Quinones first exceeded her 48-hour presenteeism bank in February 2008 and accumulated additional excess hours in March and April 2008, specifically:

| | |
|---|---|
| February 2008: | 18 hours, 27 minutes |
| March 2008: | 84 hours, 42 minutes |
| April 2008: | 87 hours, 12 minutes |

Negron-Quinones was also on track to receive a "B" in presenteeism for May 2008 – her fourth negative rating.  (Doc. 19, ¶ 11).

All of Defendant's employees were subject to monthly reviews of their presenteeism and received negative ratings for exceeding their bank irrespective of whether they were two minutes over or twenty hours over their 48-hour bank.  Therefore, any suggestion that Negron-Quinones was treated more favorably by not being fired until she was 87 hours, 12 minutes over her bank, compared to Plaintiff's being 16 hours, 43 minutes over his bank at the time of his termination, is without merit.

[10]Despite the recent change Defendant's presenteeism policy, Negron-Quinones was ineligible for a "pass" on her first "B" rating because it resulted from more than seven instances.

approved Negron-Quinones termination on or about June 3, 2008, and Lazarre terminated Negron-Quinones on June 7, 2008.[11]  (Doc. 21, ¶ 9).

## III.  Applicable Law

### A.  Standard of Review

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact.  FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Emp't Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003).  In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to

---

[11]Plaintiff contends that there was a delay in Negron-Quinones' firing and that this delay is evidence of preferential treatment.  According to Lazarre, however, the only reason for his postponement of Negron-Quinones' firing (which appears to have been delayed for, at most, no more than a month or so) was because Lazarre was on bereavement leave from May 6 to May 30, 2008 due to the death of his son.  (Doc. 19, ¶ 12).

Plaintiff also contends that Negron-Quinones' firing on June 7, 2008 occurred the day after Plaintiff filed his formal charge of discrimination with the EEOC.  (Doc. 24 at 4-5).  There is no evidence, however, that Defendant was aware of Plaintiff's EEOC charge until at least September 12, 2008, the date that Defendant first received the charge from the EEOC.  (Doc. 21 at 7, n. 3).

interrogatories, and admissions on file, designate specific facts showing that there is a genuine

issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted).

Thereafter, summary judgment is mandated against the non-moving party who fails to make a

showing sufficient to establish a genuine issue of fact for trial.  *Id*. at 322, 324-25; *Watson*, 252 F.

Supp. 2d at 1352.  The party opposing a motion for summary judgment must rely on more than

conclusory statements or allegations unsupported by facts.  *Evers v. Gen. Motors Corp.*, 770 F.2d

984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no

probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660

(5th Cir. 1976).

### B.  Title VII

Title VII prohibits employers from discriminating "against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's

race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To establish a claim

under Title VII, a plaintiff must present proof of discriminatory intent through either direct or

circumstantial evidence.[12]  *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir.

2000).  In the absence of direct evidence of discrimination, courts analyze whether summary

judgment is appropriate under the familiar framework set forth in *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Barton*, 450 U.S. 248 (1981).

*See, e.g.*, *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).  Under that

framework, Plaintiff bears the threshold burden of establishing a prima facie case of

discrimination.  *Id.*

---

[12]Plaintiff did not offer any direct evidence of discrimination in his Response and apparently concedes that his case rests solely on circumstantial evidence.  (Doc. 24 at 8-9).

Generally, a plaintiff may establish a prima facie case of racial discrimination by showing that: (1) he belongs to a racial minority; (2) he was subjected to adverse employment action; (3) his employer treated similarly-situated employees outside his classification more favorably; and (4) he was qualified to do the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "To determine whether employees are similarly situated, the Court must consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* Plaintiff must establish that the employees are "similarly situated in all relevant respects." *Wilson*, 376 F.3d at 1091. "The comparator must nearly be identical to the plaintiff to prevent the courts from second-guessing a reasonable decision by the employer." *Id.* (citations omitted). "If the plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield*, 115 F.3d at 1562.

If the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises, and the burden of production shifts to Defendant to articulate a legitimate, non-discriminatory reason for its actions. *Wilson*, 376 F.3d at 1087. Defendant "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* (citation omitted). If the proffered reason might motivate a reasonable employer, the presumption of discrimination is rebutted and the burden of production shifts back to the plaintiff. *Id.* Plaintiff must then meet any such proffered reason head on, rather than quarrel with its wisdom, and prove that it is a pretext – i.e., the proffered reason did not honestly motivate the employer. *Id.*; *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (holding that, regardless of whether the proffered reason is unfair, heavy handed, or based on erroneous facts, the "inquiry is limited to whether the employer

gave an honest explanation of its behavior.") (citations omitted); *see also Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1341 (11th Cir. 2001) (further noting that it is "not the court's role to second-guess the wisdom" or business judgment "of an employer's decisions as long as the decisions are not racially motivated"), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 (11th Cir. 2003).

## IV. Analysis

Defendant contends that Plaintiff has failed to establish a prima facie case of racial discrimination because there is no evidence that Defendant treated similarly-situated employees outside Plaintiff's classification more favorably than Plaintiff.[13]  Furthermore, Defendant argues that Plaintiff has failed to offer any evidence that the reason for Plaintiff's termination was a pretext for discrimination.  The Court agrees.

Plaintiff, a black male, was terminated by his black male supervisor after Plaintiff received three consecutive negative evaluations for violating Defendant's presenteeism policy.  Plaintiff's comparator, an Hispanic woman, was also fired by Plaintiff's supervisor after she received three consecutive negative evaluations for violating Defendant's presenteeism policy.  In short, there is simply no evidence that Defendant treated Plaintiff's similarly-situated comparator more favorably than Plaintiff.[14]  Plaintiff has therefore failed to establish a prima facie case of discrimination based on disperate treatment.

---

[13]Defendant concedes that Plaintiff is a member of a protected class, was subject to adverse employment action, and was otherwise qualified to do his job.

[14]Furthermore, when a supervisor of the same protected classification of Plaintiff is involved in an allegedly discriminatory employment decision, the likelihood of discrimination is substantially decreased.  *See, e.g.*, *Smith v. Ala. Dep't of Pub. Safety*, 64 F. Supp. 2d 1215, 1223 (M.D. Ala. 1999) (citing *Moulds v. Wal-Mart Stores*, 935 F.2d 252, 256 (11th Cir. 1991)).

Even assuming, *arguendo*, that Plaintiff was able to establish a prima facie case of discrimination, he has failed to rebut Defendant's legitimate, non-discriminatory reasons for his termination.  Indeed, Plaintiff's Response is completely devoid of any discussion of pretext and fails to address why Plaintiff's admitted violation of Defendant's presenteeism policy did not honestly motivate Defendant to terminate Plaintiff's employment.

Accordingly, Defendant is entitled to a judgment as a matter of law.

## IV.  Conclusion

For the foregoing reasons, it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. 18) is **GRANTED**.  The Clerk of the Court is directed to enter judgment in favor of Defendant, Disney Destinations, LLC, and against Plaintiff, Kendall Johnson, on all counts in the Complaint and to thereafter close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 16, 2010.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE